1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    In re                                    Case No.  22-mc-80123-SVK

8    ALPINE PARTNERS, (BVI) L.P.,             **ORDER GRANTING APPLICATION
     Applicant.                               FOR AN ORDER PURSUANT TO 28
9                                             U.S.C. § 1782 AUTHORIZING
                                              DISCOVERY FOR USE IN FOREIGN
10                                            PROCEEDINGS**

11                                            **TO BE FILED UNDER SEAL**

12                                            Re: Dkt. No. 1

13          Before the Court is the application of Alpine Partners (BVI) L.P. ("Alpine") for an order

14   pursuant to 28 U.S.C. § 1782 authorizing service of a subpoena on Vivo Capital LLC (**"Vivo

15   Capital"**), Vivo Capital Fund IX (Cayman), LLC ("Vivo LLC"), and Vivo Capital Fund IX

16   (Cayman), L.P. (**"Vivo LP,"** and together, the **"Vivo Entities"** or "Respondents").  Dkt. 1 at 1.

17   Alpine is a fund that invested in New Frontier Health Corporation ("NFH" or the "Company") and

18   owned common stock in the Company before it was taken private and delisted from the New York

19   Stock Exchange in January 2022.  *Id.*; Dkt. 1-3 ("Cecere Decl.") ¶¶ 2, 10.  Alpine, along with

20   other minority shareholders, has filed an appraisal proceeding in the Cayman Islands to have the

21   Grand Court there determine the fair value of Alpine's shares of NFH.  Dkt. 1 at 1; Cecere Decl. ¶

22   2.  Alpine requests permission to propound subpoenas on the Vivo Entities for documents and

23   deposition testimony.  Dkt. 1.

24          Alpine initially filed this request as an *ex parte* application.[1]  *Id.*  Pursuant to this Court's

25   order, Alpine served its moving papers on the Vivo Entities on June 7, 2022.  Dkts. 10–13.  All

26

27   ─────────────────────
     [1] While applications made under 28 U.S.C. § 1782 previously were considered on an *ex parte*
28   basis, the Ninth Circuit has clarified that such applications are dispositive, and the consent of all
     parties is required.  *CPC Patent Techs. Ltd. v. Apple, Inc.*, 34 F.4th 801, 808 (9th Cir. 2022).

United States District Court
Northern District of California

1    Parties have consented to the jurisdiction of a magistrate judge.  Dkts. 19, 21.  Following an

2    extended briefing schedule, the Vivo Entities opposed Alpine's application.  Dkt. 23.  Having

3    considered the Parties' submissions, the case file, and the relevant law, the undersigned **GRANTS**

4    Alpine's § 1782 application for the reasons and on the conditions discussed below.

5    **I.      BACKGROUND**

6            This case arises out of an appraisal proceeding that is currently pending in the Grand Court

7    of the Cayman Islands, the purpose of which is to determine the fair value of the shares of NFH as

8    of January 25, 2022, the day before NFH merged into and became a subsidiary of Unicorn Parent

9    II Limited (the "Merger").  *See* Dkt. 1-3 (Cecere Decl.) ¶¶ 2, 6.  Alpine is one of several dissenting

10   shareholders (together, the "Dissenters") who owned shares in NFH and invoked their statutory

11   right under Cayman law to dissent from the Merger and to have the fair value of their shares

12   determined in accordance with section 238 of the Cayman Island Companies Act, triggering the

13   commencement of the appraisal proceedings ("Appraisal Proceeding") on March 28, 2022.  *Id.*

14           **A.      Respondent Vivo Entities**

15           Respondents are California entities connected to NFH.  Alpine alleges that the Vivo

16   Entities sponsored NFH's acquisition of United Family Healthcare in 2019.  Cecere Decl. ¶ 9;

17   Dkt. 1-2 (Marks-Esterman Decl.) ¶¶ 5, 7–10; Dkt. 23-1 (Zhao Decl.) ¶ 2.  Following the

18   acquisition, Vivo Capital's Co-CEO and Managing Partner was appointed to serve as a director of

19   NFH.  Cecere Decl. ¶ 13; Marks-Esterman Decl. ¶¶ 5–6.  Two years later, in the leadup to the

20   merger that resulted in NFH going private, Alpine contends that Vivo LP and Vivo LLC were part

21   of the "Buyer Group" that submitted a proposal to acquire all outstanding shares of NFH at a rate

22   of $12.00 per ordinary share and to effect privatization of NFH through a merger.  Cecere Decl. at

23   ¶¶ 13, 17.  At the time, Alpine alleges that Vivo LP owned 10.85% of NFH's common stock.  *Id.*

24   at ¶ 13.  Vivo LP concedes that on February 9, 2021, it entered into a Consortium Agreement with

25   several other shareholders that detailed the framework for taking NFH private.  Dkt. 23 at 4; Dkt.

26   23-1 (Zhao Decl.) ¶ 6.  Subsequently, the board of directors formed a special committee tasked

27   with negotiating the details of the merger with the Buyer Group.  Cecere Decl. ¶ 18.  On August 4,

28   2021, Vivo LP and several other shareholders entered into a Support Agreement agreeing to vote

United States District Court
Northern District of California

2

1  in favor of taking the Company private and setting forth how certain shares would be rolled over.

2  Dkt. 23 at 4; Zhao Decl. ¶ 7.

3  ### B.    The Appraisal Proceeding

4  On January 7, 2022, the Company approved the details of the Merger during an

5  Extraordinary General Meeting over the objections of the Dissenters.  Cecere Decl. ¶ 30.  The

6  merger was completed on January 26, 2022, after which Vivo Capital's Co-CEO and Managing

7  Partner remained a director of NFH.  Cecere Decl. ¶¶ 13, 29.  The Appraisal Proceeding then

8  commenced on March 28, 2022, before the Honorable Justice David Doyle.  Cecere Decl. ¶¶ 6,

9  34; *see also* Directions Order.

10  ### C.    Procedural History Before This Court

11  Alpine filed its petition in this Court on May 16, 2022, seeking discovery from the Vivo

12  Entities.  Dkt. 1.  Broadly, Alpine seeks documents from between July 1, 2019 and January 31,

13  2022, regarding the fair value of the Company and its shares both at the time of the Merger and

14  historically, agreements relating to the Merger, the Vivo Entities' interests and incentives with

15  respect to the Merger, and other potential acquisitions of the Company.  Marks-Esterman Decl.,

16  Exs. 1–3 (the "Subpoenas").  In addition to its requests for the production of documents, Alpine

17  seeks to take a Rule 30(b)(6) deposition of each of the Vivo Entities regarding substantially the

18  same topics (as well as testimony concerning the documents produced by that entity).  *Id.*

19  The Vivo Entities have opposed the petition, and Alpine has replied.  Dkts. 23, 25.  On

20  August 29, 2022, Alpine advised the Court that the Grand Court in the Cayman Islands entered its

21  Directions Order on August 17, 2022, which sets forth, *inter alia*, the parameters for discovery in

22  the Appraisal Proceeding.  Dkt. 26.  In light of this development, the Court ordered supplemental

23  briefing on the impact of the Directions Order on Alpine's pending petition, which the Parties

24  provided.  Dkts. 29, 31, 32.

25  ### D.    The Directions Order

26  Justice Doyle's Directions Order contemplates that a party to the Appraisal Proceeding

27  might seek "ancillary relief in aid of these proceedings," including "applications in the United

28  States of America under 28 U.S.C. § 1782" and provides that documents received from such

United States District Court
Northern District of California

1   ancillary means must be disclosed to the other parties in the case.  Directions Order ¶¶ 47–48.

2   Additionally, Justice Doyle ordered a broad scope of discovery the Company must produce,

3   including, *inter alia*, the following documents:

4

5        5     Documents produced by, provided to or obtained from any member of the Buyer Group in relation to the Merger.

6        6     Documents provided to or obtained from the Buyer Group's financiers or prospective financiers (including, without limitation, Shanghai Pudong

7   Development Bank Co., Ltd. and China Merchant Bank Shanghai Branch) for the purposes of securing finance for the Merger (by way of debt finance or equity

8   capital contributions), undertaking due diligence on the Company and/or for negotiating the terms of the Merger.

9

10        …

11        25.     Documents produced by, provided to or received from the Company and/or any of its shareholders in relation to shareholders' interests and incentives and

12   exercise of shareholders' voting rights or voting agreements, including all written objections to the Merger received by the Company and any Documents responding

13   to, discussing, analysing or commenting on the objections received from shareholders.

14        …

15        29.     Documents between the Company and its shareholders in relation to the Merger, including in relation to the shareholders' interests and incentives, and the

16   exercise of shareholders' voting rights or voting agreements.

17        30.     Documents (including all prior versions and drafts) in relation to the negotiation of the Merger.

18   Directions Order, Appendix 3.[2]

19   ## II.    LEGAL STANDARD

20        A district court may order the production of documents or testimony for use in a foreign

21   legal proceeding under 28 U.S.C. § 1782 as long as the disclosure would not violate a legal

22   privilege. 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 249

23   (2004). An applicant may invoke the statute where (1) the discovery is sought from a person

24   residing in the district of the court to which the application is made; (2) the discovery is for use in

25

26

27   [2] The Directions Order provides that "the definitions in the Company's proxy statement dated 2 December 2021 (the 'Proxy') are adopted herein . . . ." Directions Order, Appendix 3.  Alpine's

28   subpoenas appear to adopt the same definitions as those in the Proxy statement. *See* Marks-Esterman Decl., Exs. 1–3.  The Court has sealed the Directions Order in this action.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or

2    an "interested person."  28 U.S.C. § 1782(a).

3           A district court is not required to grant an application that meets the statutory criteria, but

4    instead retains discretion to determine what discovery, if any, should be permitted.  *Intel*, 542 U.S.

5    at 264.  Several factors guide the Court's decision on a § 1782(a) request:

6           (1) whether "the person from whom discovery is sought is a participant in the foreign

7    proceeding;"

8           (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad,

9    and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court

10   judicial assistance;"

11          (3) whether the request "conceals an attempt to circumvent foreign proof-gathering

12   restrictions or other policies of a foreign country or the United States;" and

13          (4) whether the discovery requested is "unduly intrusive or burdensome."  *Id*. at 264–65.

14   The party seeking discovery need not establish that the information sought would be discoverable

15   under the governing law in the foreign proceeding or that U.S. law would allow discovery in an

16   analogous domestic proceeding.  *Id*. at 247, 261–63.

17          A district court's discretion is guided by the twin aims of § 1782: providing efficient

18   assistance to participants in international litigation and encouraging foreign countries by example

19   to provide similar assistance to our courts.  *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376

20   F.3d 79, 84 (2d Cir. 2004).  Having reviewed the Parties' arguments and supporting declarations,

21   the Court will GRANT Alpine's pending application for the reasons explained below.  The Vivo

22   Entities will respond to the Subpoenas in accordance with the Federal Rules of Civil Procedure.

23   28 U.S.C. § 1782(a); *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*,

24   16 F.3d 1016, 1020 (9th Cir. 1994).

25          //

26          //

27          //

28

### III.   DISCUSSION

#### A.   Statutory Requirements

The Vivo Entities concede that Alpine's application satisfies two of the three statutory prerequisites to § 1782, as the Vivo Entities are found in this District and Alpine has an interest in the Appraisal Proceeding but dispute that Alpine's application seeks discovery "for use" in that proceeding.  Dkt. 23 at 8-9.  The Vivo Entities argue that the discovery sought is not "for use" because (1) the Directions Order, which could restrict the scope of discovery, has not been entered; and (2) the documents and information requested are so "overbroad and irrelevant" to the narrow issue of fair value that the subpoena requests fall outside § 1782's "for use" requirement. *Id.*  As set forth above, the Directions Order has now been entered and permits broad discovery, mooting the Vivo Entities' first argument.  Their second argument fares no better.  To be "for use" in a foreign proceeding, the information sought must be relevant, and courts should be "permissive" in interpreting that standard.  *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018); *see also In re Multiflora Int'l Ltd.*, No. 20-mc-80193, 2021 WL 2662122, at \*3 (N.D. Cal. June 29, 2021) (finding applicants had shown discovery sought was "directly relevant" to their fraud claims and concluding applicants had shown discovery requested was "for use" in a foreign proceeding).  Relying on *Pioneer Corp. v. Technicolor, Inc.*, No. 18-cv-4524, 2018 WL 4961911 (C.D. Cal. Sept. 12, 2018), the Vivo Entities argue that the subpoenas seek irrelevant documents and information because some of the requests seek information pre-dating the Company's privatization, including regarding the Vivo Entities' initial investment in NFH.  Dkt. 23 at 8–9.  Such reliance is misplaced.  In *Pioneer*, the evidence sought was "not … relevant to the core issues presented in the German Action," and the district court accordingly upheld the magistrate judge's determination that narrowing the requests could not cure the defect in the § 1782 application.  *Pioneer*, 2018 WL 461911, at \*11.

By contrast, here, the documents Alpine seeks are plainly relevant to the valuation of Alpine's shares at the time of the Merger, the Merger itself, and the Buyer Group's role in the Merger.  Marks-Esterman Decl. ¶¶ 6, 12; Cecere Decl. ¶¶ 64–70; *see also Snowflake, Inc. v. Yeti Data, Inc.*, No. 20-mc-80190, 2021 WL 1056550, at \*6 (N.D. Cal. Mar. 18, 2021) (rejecting third

United States District Court
Northern District of California

1    party's argument under *Pioneer* where discovery sought was directly relevant to applicant's bad

2    faith defense in the underlying proceeding).  As set forth above, Alpine alleges that both Vivo LP

3    and Vivo LLC were members of the Buyer Group and that Vivo Capital's Co-CEO and Managing

4    Partner served as a Company director prior to and following the Merger.  Cecere Decl. ¶¶ 13, 17;

5    *see also* Zhao Decl. ¶ 4.  The fact that the documents and information Alpine seeks through its

6    subpoenas correlate to many of the document categories Justice Doyle has ordered the Company

7    to produce further confirms the relevance of the documents Alpine seeks.  *See* Directions Order,

8    Appendix 3; Marks-Esterman Decl., Exs. 1–3.  Additionally, Alpine has offered expert opinion

9    evidence that the "information sought in this Application bears directly on the fair value of the

10   Dissenting Shareholders' shares and will assist the expert retained by the Dissenting Shareholders

11   (including Petitioner), the Company's expert, and the Grand Court in its determination of fair

12   value."  Cecere Decl. ¶ 65.  Alpine, thus, has carried its burden of demonstrating the relevance of

13   the discovery it seeks, and in light of Justice Doyle's order that information produced pursuant to

14   § 1782 be disclosed to the other parties, any discovery obtained certainly will be used in the

15   Appraisal Proceeding.  Directions Order ¶ 48.

16          The Vivo Entities further complain that Alpine has failed to provide "any explanation—let

17   alone justification—about how such information would be helpful, or even used, in an appraisal

18   proceeding relating to whether the Merger Price is fair for a public company's privatization."  Dkt.

19   23 at 9.  The Vivo Entities, however, identify no authority that § 1782 requires a party seeking

20   discovery to prove that it can use that information in the foreign tribunal.  Indeed, the Ninth

21   Circuit has "rejected a requirement regarding admissibility in the foreign tribunal" and has also

22   rejected a requirement that the party seeking discovery make a "threshold showing" that the

23   discovery sought be "discoverable in the foreign proceeding."  *Advanced Micro Devices, Inc. v.*

24   *Intel Corp.*, 292 F.3d 664, 668–69 (9th Cir. 2002).  Moreover, the Directions Order requires the

25   Company to produce several of the same categories of documents sought in the Subpoenas for the

26   period of January 6, 2017 to January 6, 2022.  Directions Order, Appendix 3; Marks-Esterman

27   Decl., Exs. 1–3.  This timeframe covers the entire period in which the Vivo Entities were involved

28

7

United States District Court
Northern District of California

1    with the Company, including the initial investment in 2019, and reflects Justice Doyle's

2    assessment that such documents are relevant to the issue of fair valuation.  *See* Zhao Decl. ¶ 4.

3         Finally, the Vivo Entities' objections regarding overbreadth pertain to the extent of the

4    discovery that should be granted, not whether the statutory "for use" requirement has been

5    satisfied.  *See In re Athos Asia Event Driver Master Fund*, No. 21-mc-0153, 2021 WL 1611673, at

6    *2 (E.D. Mo. Apr. 26, 2021).  Alpine clearly seeks discovery of materials "for use" in a foreign

7    proceeding.  *See, e.g.*, *In re Application of Quadre Investments, L.P.*, No. 18-mc-00118, 2019 WL

8    1075274, at *2 (C.D. Cal. Jan. 7, 2019) (affirming magistrate judge's order granting in part § 1782

9    application for discovery for use in Cayman Islands appraisal proceeding and noting that statutory

10   factors were met).  While the Court agrees that Petitioner's discovery requests could be narrowed,

11   the most efficient means of doing so is by granting the Application and then requiring the Parties

12   to meet and confer pursuant to this Court's local rules and the undersigned's Civil and Discovery

13   Referral Matters Standing Order as well as the Directions Order.

14        Accordingly, the Court finds the statutory requirements have been satisfied.

15   **B.    Intel Factors**

16        Although the application satisfies the statutory requirements, the Court must also

17   determine whether judicial assistance is appropriate by considering the *Intel* factors.

18        **1.    Participation of Target in the Foreign Proceeding**

19        The first factor considers whether the person from whom discovery is sought is a party to

20   the foreign proceeding.  *Intel*, 542 U.S. at 247.  Typically, this factor weighs against authorizing

21   discovery if the person from whom it is sought is a participant in the foreign proceeding because

22   the "foreign tribunal has jurisdiction over those appearing before it and can itself order them to

23   produce evidence."  *Id.* at 264.  However, "the key issue is whether the material is obtainable

24   through the foreign proceeding."  *In re Varian Med. Sys.*, 2016 WL 1161568, at *3 (internal

25   quotation marks and citation omitted).  Consequently, the first discretionary factor "favors

26   discovery against nonparticipants in foreign proceedings."  *In re Anahara*, No. 22-mc-80063,

27   2022 WL 783896, at *2 (N.D. Cal. Mar. 15, 2022).

28

1      While the Vivo Entities concede that they are not parties to the Appraisal Proceeding, they

2  maintain that (1) the discovery Alpine seeks through its subpoenas can be obtained from NFH in

3  the Appraisal Proceeding; and (2) even if the documents cannot be obtained from NFH, Alpine

4  can propound subpoenas on the Vivo Entities, two of which are within the jurisdiction of the

5  Cayman Islands court, through the Appraisal Proceeding.  Dkt. 23 at 10.  The Court addresses

6  each of these arguments in turn.

7      Alpine asserts that it seeks "unique discovery from the Vivo Entities, including internal

8  documents and communications, their valuation analysis, and their communications with third

9  parties who will not be parties to the Appraisal Proceeding."  Dkt. 25 at 5.  A review of the

10  proposed subpoenas bears this out: most of the discovery sought concerns the Vivo Entities'

11  internal and external communications regarding the Merger and the valuation of NFH.  *See*

12  Esterman-Marks Decl., Exs. 1–3.  Only one document request—Request for Production No. 10—

13  appears to duplicate material that NFH may produce in the course of discovery in the Appraisal

14  Proceeding.  At most, such overlap warrants narrowing the scope of the Subpoenas, not denying

15  the application in its entirety.

16      Regarding the second argument, Alpine concedes that Vivo LP and Vivo LLC may be

17  within the Grand Court's jurisdiction but maintains that the discovery sought here may not be

18  available in the Cayman Islands because of their discovery procedures.  Cecere Decl. ¶¶ 45–53.

19  Alpine's Cayman law expert opines that the Cayman Islands court must exercise its discretion in

20  ordering "a deposition to be taken from persons both within and outside the Cayman Islands" and

21  further notes that "the usual grounds on which such an order will be made for a deposition to be

22  taken within the jurisdiction are very narrow and include where the witness is too old or ill to

23  attend trial and an earlier deposition is required."  Cecere Decl. ¶ 50.  The Vivo Entities dispute

24  these conclusions and have submitted sworn rebuttal evidence that the Cayman Islands subpoena

25  processes enable the Grand Court to determine the terms of the disclosure of documents and the

26  breadth, content and timing of any deposition testimony."  Dkt. 23-4 ("Imrie Decl.") ¶ 43.  The

27  Court need not make findings regarding whose expert correctly characterizes Cayman Island law

28  and procedure.  *Siemens AG v. W. Digital Corp.*, No. 13-cv-1407, 2013 WL 5947973, at *2 (N.D.

United States District Court
Northern District of California

9

1    Cal. Nov. 4, 2013); *see also Cryolife, Inc. v. Tenaxis Med., Inc.*, No. 08-cv-5124, 2009 WL 88348,

2    at *3 (N.D. Cal. Jan. 13, 2009) (analyzing the first *Intel* factor in a case where the "parties disagree

3    whether the German court actually has the authority to compel [the defendant] to produce the

4    discovery sought"); *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir.1995) ("The

5    record reveals that this litigation became a battle-by-affidavit of international legal experts.... [W]e

6    do not read the statute to condone speculative forays into legal territories unfamiliar to federal

7    judges."). Accordingly, the Court finds this factor neutral as to those entities within the Grand

8    Court's jurisdiction, Vivo LP and Vivo LLC, but weighs in favor of permitting discovery as to

9    Vivo Capital.

### 2.    Receptivity of Foreign Tribunal to U.S. Judicial Assistance

11    The second factor requires the Court to consider "the nature of the foreign tribunal, the

12    character of the proceedings underway abroad, and the receptivity of the foreign government or

13    the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "This

14    factor focuses on whether the foreign tribunal is willing to consider the information sought." *In re*

15    *Varian Med. Sys.,* 2016 WL 1161568, at *4. "[I]f there is reliable evidence that the foreign

16    tribunal would not make any use of the requested material, it may be irresponsible for the district

17    court to order discovery, especially where it involves substantial costs to the parties involved." *Id*.

18    (quoting *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008)). Courts have

19    denied requests for discovery where the foreign tribunal or government expressly states it does not

20    want the assistance of a United States federal court under § 1782. *See, e.g.*, *Schmitz*, 376 F.3d at

21    84-85 (affirming denial of § 1782 request where German government expressly objected to the

22    information sought due to concerns it would jeopardize an ongoing German criminal investigation,

23    as well as German sovereign rights); *In re Ex Parte App. of Qualcomm Inc.*, 162 F. Supp. 3d 1029,

24    1040–41 (N.D. Cal. 2016) (concluding that this Intel factor weighed heavily against discovery

25    where Korean Fair Trade Commission filed an amicus brief stating it had no need or use for

26    requested discovery).

27    Here, the Grand Court is clearly receptive to assistance in discovery from the United States

28    because the Directions Order expressly contemplates that the parties to the Appraisal Proceeding

United States District Court
Northern District of California

United States District Court
Northern District of California

1    will use ancillary means to obtain third-party discovery: "Any party that seeks ancillary relief in

2    aid of these proceedings, whether by way of third party discovery applications, applications in the

3    United States of America under 28 U.S.C. s.1782 [sic], or otherwise, shall notify the other parties

4    as soon as practicable after having served such an application, and in any event within 7 days' of

5    service."  Directions Order ¶ 47; *see also* Cecere Decl. ¶¶ 52–62 (citing *Lyxor Asset Management*

6    *S.A. v Phoenix Meridien Equity Limited*, 2009 CILR 553 and *In the Matter of Nord Anglia*

7    *Education Inc*, 2019 CILR 200317 (Dkt. 8) for the proposition that Cayman Islands courts

8    anticipate that parties will seek discovery pursuant to § 1782 in the United States in § 238

9    appraisal proceedings).  The Vivo Entities' chief argument in their opposition regarding the

10   second *Intel* factor was that the Directions Order had yet to issue and potentially could curtail the

11   scope of discovery permitted.  Dkt. 23 at 12–14.  The Directions Order has now issued, mooting

12   that line of argument. In their supplemental brief, the Vivo Entities instead argue that the third-

13   party subpoenas are premature and that Alpine should have waited until the Company has

14   produced the first wave of discovery on December 14, 2022. Dkt. 31 at 2–3.  The Vivo Entities,

15   however, cite no authority that Alpine must wait to issue third-party subpoenas until a particular

16   moment in the underlying proceeding.  Nor do the Vivo Entities explain why Justice Doyle would

17   not be receptive to this Court's assistance when the Directions Order anticipates that the parties to

18   the Appraisal Proceeding may resort to a § 1782 application.  Directions Order ¶ 47.  Accordingly,

19   the Court finds this factor weighs in favor of permitting discovery.  *Accord In re Hopkins*, No. 20-

20   mc-80012-SVK, 2020 WL 733182, at *3 (N.D. Cal. Feb. 13, 2020) (finding no indication Cayman

21   Islands court would not be receptive to the information sought); *In re Kingstown Partners Master*

22   *Ltd.*, No. 21-mc-691, 2022 WL 1081333, at *5 (S.D.N.Y. Apr. 8, 2022) (finding second factor

23   favored permitting discovery where respondents failed to show Justice Parker of the Cayman

24   Islands Grand Court was not receptive to discovery petitioner sought); *In re Athos Asia Event*

25   *Driver Master Fund*, No. 21-mc-0153, 2021 WL 1611673, at *3 (E.D. Mo. Apr. 26, 2021)

26   (finding second factor favored discovery where there was "no indication in the record" that the

27   Cayman Islands court would be "unwelcome" to the U.S. court's discovery order).

28

United States District Court
Northern District of California

### 3.     Circumvention of Proof-Gathering Restrictions

This Court must next consider whether Applicant's request for discovery "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  "A perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Varian Med. Sys.*, 2014 WL 1161568, at \*5 (citation omitted).  Courts have found that this factor weighs in favor of discovery where there is "nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions." *In re Google, Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at \*3 (N.D. Cal. Dec. 15, 2014); *see also In re Eurasian Natural Resources Corp. Ltd.*, No. 18-mc-80041-LB, 2018 WL 1557167, at \*3 (N.D. Cal. Mar. 30, 2018).

The Vivo Entities contend that Alpine is attempting to circumvent Cayman Islands discovery procedures by resorting to § 1782.  Dkt. 23 at 14–15; Dkt. 31 at 2–3.  Such argument is meritless.  "A party's recourse to discovery permissible under U.S. rules does not indicate an intention to circumvent foreign proof-gathering restrictions and thus is not a basis for denying a § 1782 request." *Snowflake Inc.*, 2021 WL 1056550, at \*4; *see also Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) ("Heraeus cannot obtain even remotely comparable discovery by utilizing German procedures and there is nothing to suggest that the German court would be affronted by Heraeus's recourse to U.S. discovery or would refuse to admit any evidence, or at least any probative evidence (German judges can disregard evidence that would waste the court's time), that the discovery produced.").  Again, as noted above, Justice Doyle's Directions Order—far from barring § 1782 discovery as the Vivo Entities prophesied may occur—specifically contemplates that the parties will resort to complementary evidentiary procedures and provides for the disclosure of all documents obtained through such means.  Directions Order ¶¶ 47–48.  Thus, the Court has no trouble in concluding that this factor also weighs in favor of discovery.

### 4.     Unduly Burdensome or Intrusive Discovery

Under the final factor, the Court considers whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.  Generally, requests are not burdensome when

12

1    they are narrowly tailored, do not seek confidential information and do not appear to be a broad

2    'fishing expedition' for irrelevant information."  *In re Ex Parte App. of Qualcomm Inc.*, 162 F.

3    Supp. 3d at 1043; *see also Matter of de Leon*, No. 19-MC-80296-DMR, 2020 WL 1820683, at *3

4    (N.D. Cal. Apr. 10, 2020), *aff'd* 2021 WL 718840 (N.D. Cal. Feb. 24, 2021).  Further, depositions

5    of corporate officers are standard practice in U.S. civil litigation, may be ordered in a § 1782

6    application, and are not burdensome because Rule 45(d)(1) can ensure that the length, time and

7    place of the deposition are not unduly burdensome.  *See HRC-Hainan Holding Co., LLC v. Hu*,

8    No. 19-MC-80277-TSH, 2020 WL 906719, at *15 (N.D. Cal. Feb. 25, 2020); *Knaggs v. Yahoo!*

9    *Inc.*, No. 15-MC-80281-MEJ, 2016 WL 3916350, at *8 (N.D. Cal. July 20, 2016).

10    **A.    Alpine's Document Subpoenas**

11        The Vivo Entities argue that Alpine's document subpoenas are "plainly irrelevant,

12    overbroad, and disproportionate to issues in the Cayman Proceeding," the central purpose of

13    which is determining the fair value of Alpine's shares at the time of the Merger.  Dkt. 23 at 20.

14    Yet, the Vivo Entities also have submitted a sworn declaration that preliminary searches of their

15    files yield "nearly 30,000 email search results" related to the Company.  Dkt. 23-1 ("Zhao Decl.")

16    ¶ 12.  More than ten of Vivo Capital's eighty employees allegedly were involved in matters related

17    to the Company.  Dkt. 23 at 19.  And the Vivo Entities further concede that Vivo LP was party to

18    both the Support Agreement and the Consortium Agreement, which were executed in the leadup to

19    the Merger and concerned how existing shares would be rolled over.  Zhao Decl. ¶¶ 6–7.  Thus, it

20    appears that the Vivo Entities have some discoverable information in spite of their claims that they

21    "played a minimal role" in the Merger.  Dkt. 23 at 3.

22        The Vivo Entities further complain that Alpine has filed another § 1782 application in the

23    United States District Court for the District of Delaware seeking documents and information from

24    the financial advisors to the Company's Special Committee, Duff & Phelps.  Dkt. 23 at 19; *In re*

25    *Application of Alpine Partners (BVI) L.P., C.A.*, No. 22-mc-239-CFC-JLH (D. Del.).  In that

26    action, Duff & Phelps has agreed to produce a global directory file related to its engagement to

27    assist the Special Committee, which file, the Vivo Entities speculate, "likely contains documents

28    duplicative of what the Vivo Entities would produce and likely more relevant given Duff &

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    Phelps' direct involvement with the Going-Private Transaction." Dkt. 23 at 19; Dkt. 3, *In re Duff*

2    *& Phelps*. This argument is a red herring. The mere fact that another third party will be

3    producing documents in response to a subpoena does not mean that the Vivo Entities do not have

4    relevant and responsive documents.

5    While the Court finds the document requests have appropriate temporal limitations, the

6    Court agrees with the Vivo Entities that the thirteen document requests should be narrowed: (1)

7    several of the requests now overlap with documents Justice Doyle has ordered the Company to

8    produce (e.g., RFP 10); and (2) several requests likewise may overlap with documents Duff &

9    Phelps has agreed to produce in a separate § 1782 proceeding. As such defects are easily

10   remedied and because the Vivo Entities appear to have information relevant to the valuation of the

11   Company's shares at the time of the Merger, the Court will order the parties to meet and confer to

12   narrow the scope of the discovery requests and establish a schedule for the production of

13   responsive documents. If the Parties are unable to agree on the scope of the document requests,

14   the Parties shall bring the dispute to the Court's attention promptly and in accordance with the

15   undersigned's Civil and Discovery Referral Matters Standing Order.

16   Subject to these guidelines, the Court finds the document requests are not unduly

17   burdensome. To the extent the Vivo Entities continue to assert that any of the information Alpine

18   seeks through the narrowed subpoena calls for the disclosure of confidential or proprietary

19   information, the Parties can enter into a protective order. *See, e.g.*, *In re Illumina Cambridge Ltd.*,

20   No. 19-mc-80215, 2019 WL 5811467, at \*5 (N.D. Cal. Nov. 7, 2019); *In re NanoPyxis Co., Ltd.*,

21   No. 17-mc-80151, 2018 WL 1156838, at \*4–5 (N.D. Cal. Mar. 5, 2018).

22   **B.    Alpine's Deposition Subpoenas**

23   Alpine's seven deposition topics in the proposed 30(b)(6) subpoenas also suffer from

24   overbreadth. While such overbreadth can be remedied, the Court finds that Alpine has not shown

25   that the potential benefits of deposing a representative from Vivo LP and Vivo LLC outweigh the

26   burden and expense of such depositions. Conclusory assertions that "[c]ourts in this Circuit

27   routinely grant requests for 30(b)(6) depositions pursuant to Section 1782 when the target of an

28   application can provide relevant testimony" is insufficient to show that corporate representatives

14

1    from Vivo LP and Vivo LLC actually can provide relevant testimony in this action.  *See In re*

2    *Kingstown Partners*, 2022 WL 1081333, at *6 ("[T]he Court concludes that Kingstown has not

3    shown that the incremental benefit of additional information which might be elicited from

4    corporate representative depositions of each Respondent outweighs the burden and expense of

5    such potential depositions, given the focus of the FGL Appraisal on the fair value of FGL's shares

6    at the time of the Merger and the lack of any request for deposition testimony from any particular

7    deponent with personal knowledge of the topics at issue.").

8            Alpine has, however, carried its burden as to Vivo Capital, whose Co-CEO, Mr. Shan Fu,

9    also served as one of the Company's directors prior to, during, and after the Merger.  Dkt. 25 at

10   14; Cecere Decl. ¶¶ 13–14.  By the Vivo Entities' own admission, Vivo Capital is headquartered

11   in this District.  Zhao Decl. ¶ 2.  The Vivo Entities insist that the Directions Order will allow

12   Alpine's expert to obtain the necessary information through a "Management Meeting," at which

13   the Parties' experts question members of the Company's management team.  Dkt. 31 at 3.  The

14   Directions Order allows the Company to identify "appropriate members of its management team"

15   to meet with the parties' experts for a management meeting but does not guarantee that a particular

16   member of the management team, such as Mr. Fu, will be produced and is procedurally distinct

17   from depositions under the Federal Rules.  *See* Directions Order ¶¶ 25, 31.  Alpine states that Mr.

18   Fu "possesses unique information" about the Company's value in light of his position as both Co-

19   CEO of Vivo Capital and Director of the Company prior to, during, and after the Merger.  Dkt. 25

20   at 20.  The Vivo Entities do not dispute that Mr. Fu likely has relevant and discoverable

21   information.  *See generally* Dkt. 31.  The Vivo Entities do suggest that Mr. Fu and other

22   employees who are most knowledgeable about the deposition topics "are likely located in China."

23   Zhao Decl. ¶ 13; Dkt. 31 at 3.  While Federal Rule of Civil Procedure 45 does impose territorial

24   limits on a district court's subpoena powers, such vague statements are insufficient to show that

25   (1) Mr. Fu lives and works in China; or (2) Vivo Capital is unable to produce a witness in this

26   District to sit for a Federal Rule of Civil Procedure 30(b)(6) deposition on the topics set forth in

27   the subpoena [Dkt. 1-2, Ex. 1].  Accordingly, the Court finds that requiring Vivo Capital to

28   produce a witness for a 30(b)(6) deposition is not unduly burdensome.  *See, e.g.*, *HRC-Hainan*

United States District Court
Northern District of California

15

1    *Holding Co., LLC*, 2020 WL 906719, at \*15.  As with the document requests, Alpine and the Vivo

2    Entities shall meet and confer to narrow the scope of the deposition topics.

3          In sum, the *Intel* factors weigh in Alpine's favor.

4                    **5.      Propriety of Cost-Shifting**

5          Finally, as non-parties to the Appraisal Proceeding, the Vivo Entities ask the Court to shift

6    all costs of compliance with the subpoenas to Alpine pursuant to Rule 45(d)(2)(B)(ii).  Dkt. 23 at

7    22-23.  District courts may allocate the expenses of a non-party's compliance with subpoenas

8    served pursuant to § 1782.  *See, e.g.*, *Mirana v. Battery Tai-Shing Corp.*, No. 08-80142, 2009 WL

9    290459 (N.D. Cal. Feb. 5, 2009); *In re Kingstown Partners Master Ltd.*, 2022 WL 1081333, at \*7.

10   In determining the appropriate allocation, the Court may look to cases that decided similar issues

11   under Federal Rule of Civil Procedure 45.  *Mirana*, 2009 WL 290459, at \*4; *In re Kingstown*

12   *Partners Master Ltd.*, 2022 WL 1081333, at \*7.

13         Federal Rule of Civil Procedure 45 governs discovery from third parties by subpoena, and

14   "Rule 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance with a

15   subpoena, if those costs are significant."  *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th

16   Cir. 2013); *see also Mirana*, 2009 WL 290459, at \*4 ("Cost shifting is necessary only to protect

17   non-parties against significant costs.").  "[W]hen discovery is ordered against a non-party, the only

18   question before the court in considering whether to shift costs is whether the subpoena imposes

19   significant expense on the non-party. If so, the district court must order the party seeking

20   discovery to bear at least enough of the cost of compliance to render the remainder 'non-

21   significant.'"  *Legal Voice*, 738 F.3d at 1184.

22         "[N]either the Federal Rules nor the Ninth Circuit has defined 'significant expenses,'

23   which is a term that readily lends itself to myriad interpretations depending on the circumstances

24   of a particular case."  *Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277, 281

25   (N.D. Cal. 2017) (quoting *United States v. McGraw-Hill Cos., Inc.*, 302 F.R.D. 532, 536 (C.D.

26   Cal. 2014)).  Courts consider both (1) whether the nonparty has an interest in the outcome of the

27   underlying case; and (2) the non-party's financial ability to bear the costs of production.  *Id.*  The

28

United States District Court
Northern District of California

16

1   non-party seeking to shift costs also "must demonstrate that its costs are reasonable and resulted

2   from compliance with the subpoena." *Id.* at 281–82.

3          The Vivo Entities submit sworn evidence that "[a] thorough search and review of

4   documents responsive to the Subpoenas would significantly affect Vivo Capital's business

5   operations and likely cause Vivo Capital to incur vendor costs and attorneys' fees of tens of

6   thousands of dollars. Compliance with a deposition would likely cause Vivo Capital to incur

7   substantial fees." Zhao Decl. ¶ 13. Such evidence is insufficient to establish that the Vivo

8   Entities will incur significant expenses if ordered to comply with the subpoenas. *See Mirana*,

9   2009 WL 290459, at *4. Further, the request is premature, particularly in light of *Kingstown*,

10   where, like the Vivo Entities, the respondents had "significant roles in the Merger underlying the

11   FGL Appraisal," and the Court found it inappropriate to shift the entirety of the costs to petitioner.

12   *In re Kingstown Partners Master Ltd.*, 2022 WL 1081333, at *7. Accordingly, the Vivo Entities'

13   request that the costs of complying with Alpine's subpoenas be shifted to Alpine is **DENIED**

14   **WITHOUT PREJUDICE**. If the Vivo Entities incur "significant" costs in complying with

15   Alpine's subpoenas, they may renew their motion at a later date.

16   **IV.**        **CONCLUSION**

17          For the foregoing reasons, the Court **GRANTS** Alpine's § 1782 application subject to

18   further narrowing of the document requests to each of the Vivo Entities and the further narrowing

19   of the deposition topics for the 30(b)(6) deposition of Vivo Capital's designee.

20          1.  Alpine may serve the proposed Subpoenas on the Vivo Entities. Marks-Esterman

21              Decl., Exs. 1–3.

22          2.  Alpine and the Vivo Entities are further **ORDERED** to meet and confer regarding

23              a protective order and shall file a proposed stipulated protective order by no later

24              than **14 days after this Order's issuance**. To the extent Alpine and the Vivo

25              Entities disagree regarding the language to include in the protective order, they may

26              bring the dispute to the Court's attention in accordance with the undersigned's

27              Civil and Discovery Referral Matters Standing Order.

28

United States District Court
Northern District of California

17

3.  Alpine and the Vivo Entities are **ORDERED** to meet and confer in-person, by phone, or by videoconference regarding the scope of the Subpoenas within 14 days of this Order's issuance.  The Court does not consider email communications sufficient to satisfy the meet and confer requirements set forth in the undersigned's Civil and Discovery Referral Matters Standing Order.  To the extent concurrent productions, either pursuant to the Directions Order or to another § 1782 application, overlap with the documents requested in the Subpoenas, Alpine must make a good faith effort to further refine its requests to prevent the production of duplicate materials.

4.  To the extent the Parties find it necessary, proposed redactions to this Order must be submitted to the Court **within seven days of this Order's issuance**.

5.  The Vivo Entities shall preserve the information sought by the subpoenas pending resolution of further disputes.

6.  Any information Alpine obtains pursuant to the subpoenas may be used only for purposes of the anticipated action in the Cayman Islands, and Alpine may not release such information or use it for any other purpose, absent a Court order authorizing such release or use.

**SO ORDERED.**

Dated: October 18, 2022

_____
SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

18